**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PEDRO REYNOSO,** | : | |
| **Petitioner,** | : | |
| **v.** | : | **Civ. No. 16-01721** |
| | : | |
| **CYNTHIA LINK, *et al.*,** | : | |
| **Respondents.** | : | |

**O R D E R**

Having been convicted in 1996 of two 1991 murders, state inmate Pedro Reynoso seeks habeas relief. (Doc. No. 71); 28 U.S.C. § 2254. He has filed counseled Objections to Magistrate Judge Sitarski's Recommendation that I deny relief without issuing a certificate of appealability. (Doc. Nos. 93, 120.) It appears that Reynoso is seeking to retry his murder prosecution, urging that the evidence he presents is more credible than that the Commonwealth presented at trial. Federal habeas review of state proceedings is necessarily limited and does not provide the means for such a "retrial," especially when, as Judge Sitarski correctly found, the "new" evidence (almost all created decades after the murders) is unreliable. I will thus overrule Reynoso's Objections, adopt Judge Sitarski's Report and Recommendation, and deny the Petition without conducting a hearing or issuing a certificate of appealability.

## I. BACKGROUND

### A. Trial and Sentencing

On July 3, 1996, a Philadelphia jury convicted Reynoso (tried under the name "Pedro Reymoseo") of two counts of first-degree murder and a weapons offense for the July 23, 1991 drive-by shootings of Carlos Torres and Charles Rivera. Commonwealth v. Reymoseo, No. CP-51-CR-0500301-1994 (Phila. Cnty. Com. Pl.) ("Crim. Dkt."); 18 Pa. Cons. Stat. §§ 2502, 907; see also Commonwealth v. Reymoseo, No. 2657 EDA 2014, 2015 WL 7185493, at *1 (Pa. Super. Ct.

Nov. 16, 2015). Reynoso was sentenced to life imprisonment for the murders followed by 11.5 to 60 months' incarceration for the gun crime. Crim. Dkt. at 3.

Reynoso was represented at trial by Louis T. Savino—an enormously skilled, accomplished defense lawyer. (See Doc. No. 71 at 58.) The Commonwealth's trial evidence included eyewitness testimony from Samuel Wilkerson and Sarah Robinson, who identified Reynoso—whom they referred to as "Poppo Dito" or "Papadito"—as the shooter. (See N.T. 6/25/96 at 54:23–25, 91:3–10; N.T. 6/26/96 at 163:23–64:12, 166–67, 169.) Robinson testified that she saw two guns fire from the driver's side window. (N.T. 6/26/96 at 164:2–12.) Wilkerson testified that right before the shooting, he heard one of the victims threaten to kill "the Dominicans" who had stolen his guns. (N.T. 6/25/96 at 54:17–25.) A firearms expert testified that the shooting involved "a minimum of two firearms." (N.T. 6/27/96 at 105:1–9.) Reynoso, who is Dominican, called two alibi witnesses, who testified that they saw Reynoso in the Dominican Republic town of Pimentel around the day the Philadelphia murders were committed. (See N.T. 6/28/96 at 14–79.) The Commonwealth called forensic document expert Elaine Wooten, who testified without contradiction that the July 27, 1991 Dominican exit stamp on Reynoso's passport had been forged. (See N.T. 6/26/96 at 80–137; N.T. 6/27/96 at 111–140, 149–173.) The Commonwealth also called an INS inspector, who testified that although Reynoso's passport had a "Dominican entry stamp from the 13th of July, 1991, and [a Dominican] exit [stamp] on July 27th, 1991"—which was four days after the Torres-Rivera murders—"at about that time [the INS] had been intercepting other people from the Dominican Republic who had stamps placed in their passports to make it look like they were not in the United States at the time—at times that they actually were." (N.T. 6/27/96 at 166:19–23, 167:1–3.)

Felo Garcia (who sat next to the driver of the car from which the shots were fired) was tried separately and convicted of two counts of first-degree murder and one count of criminal conspiracy. (See Doc. No. 93 at 3–4); Commonwealth v. Garcia, No. CP-51-CR-0746321-1991 (Phila. Cnty. Com. Pl.). At both Reynoso's and Garcia's trials, Wilkerson testified that a third man, "Chuito," had been sitting in the car's backseat. (Doc. No. 93 at 3; N.T. 6/26/96 at 51:20–24, 62:8–63:8.)

**B. Direct Appeal and Collateral State Court Litigation**

After the Superior Court rejected Reynoso's appeal, the Supreme Court denied allocatur. Commonwealth v. Reynoso, 726 A.2d 1082 (Pa. Super. Ct. 1998) (table); Commonwealth v. Reynoso, 738 A.2d 456 (Pa. 1999) (table).

On July 9, 2001, the PCRA Court dismissed Reynoso's first, *pro se* petition after appointed counsel submitted a Finley no-merit letter. (Doc. No. 93 at 5); Commonwealth v. Finley, 550 A.2d 213 (1988); 42 Pa. Cons. Stat. § 9541 *et seq*. The Superior Court affirmed, and Reynoso did not seek allocatur. (Doc. No. 93 at 5.)

On November 22, 2010, now represented by counsel, Reynoso filed a second PCRA petition, in which he alleged that Robinson had recanted her trial testimony, and that this recantation constituted new exculpatory evidence that would have changed the outcome of his trial. (Id.) The PCRA Court dismissed this petition as untimely, and Reynoso did not appeal. (Id.)

On November 22, 2011, Reynoso filed a third, counseled PCRA petition, alleging that Wilkerson had also recanted his trial testimony. (Id.) After holding three evidentiary hearings, the PCRA Court found Wilkerson's recantation testimony incredible and dismissed the petition. (Id. at 5–6.) The Superior Court affirmed, and the Supreme Court denied allocatur. (Id. at 6.)

**C. Federal Habeas Proceedings**

It is undisputed that Reynoso had until May 4, 2003 to seek habeas relief under AEDPA. (See Doc. No. 40 at 51); 28 U.S.C. § 2244(d)(1)(A). Reynoso filed his initial, counseled § 2254 petition in this Court on April 8, 2016, and amended it on January 27, 2017. (Doc. Nos. 1, 16.) He concedes that his Petition is untimely, but argues that his "actual innocence" overcomes this bar. (Doc. No. 16 at 90 (citing Schlup v. Delo, 513 U.S. 298 (1995); McQuiggin v. Perkins, 569 U.S. 383, 386 (2013)).) The Commonwealth does not agree. (Doc. No. 21.)

On April 18, 2018, Magistrate Judge Sitarski recommended dismissal of the Petition as time-barred, finding that Reynoso failed to show his actual innocence. (Doc. No. 23); Reynoso v. Link, No. 16-1721, 2018 WL 3097349 (E.D. Pa. Apr. 18, 2018). Judge Sitarski found that much of the evidence presented by Reynoso in his petition was not "new" because it was known to Reynoso at the time of his trial. Id. at *5–6. On June 22, 2018, Judge Robert F. Kelly adopted and approved the Report over Reynoso's objections. Reynoso v. Link, No. 16-1721, 2018 WL 3092376 (E.D. Pa. June 22, 2018).

The Third Circuit granted Reynoso's request for a certificate of appealability on whether Reynoso's Petition was timely in light of the Third Circuit's intervening Reeves decision. Reynoso v. Superintendent Graterford SCI, No. 18-2523 (3d Cir. Jan. 8, 2019) (citing Reeves v. Fayette SCI, 897 F.3d 154, 164 (3d Cir. 2018) ("when a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the Schlup actual innocence gateway")). The Circuit also ruled that the Petition "states a valid ineffective assistance of counsel claim that is debatable among jurists of reason based on [Reynoso's] attorney's alleged failure to present additional alibi and identification evidence." Id.

Upon remand, this case was reassigned to me, and I referred it to Judge Sitarski for a second Report and Recommendation. (Doc. Nos. 33, 35.) Judge Sitarski ordered supplemental briefing addressing Reeves. (Doc. No. 36.)

After engaging in "voluntary discovery" with the Commonwealth, Reynoso filed a "Supplemental Amended 2254 Petition," which the Commonwealth opposes. (Doc. Nos. 71, 77, 93 at 8.) Reynoso again argues that he has sufficient new evidence to make out his actual innocence:

- Eight alibi affidavits from his friends and family—signed some nine years after the murders—who purportedly saw Reynoso in or around Pimentel, on or around July 23, 1991;
- Unsworn Zoom interviews conducted 29 years after the murders between counsel and four additional alibi witnesses;
- Additional documentary and photographic alibi evidence;
- A report by immigration attorney Thomas Griffin concluding that Reynoso continuously resided in the Dominican Republic from July 13, 1991 through March 23, 1994, and explaining that Reynoso's Dominican July 27, 1991 exit and March 10, 1994 entry passport stamps were fabricated to permit Reynoso to reenter the United States;
- Purportedly suppressed H-File documents that identified Chuito and "Poppodito" as the shooters, and that identified Felo Garcia (not Reynoso) as "Popidito."
- Recantations from Robinson and Wilkerson, who both now identify Chuito as the shooter;
- An affidavit from Marisol Colon-Torres—the sister of one of the victims—in which she avers 20 years after the murders that Chuito acknowledged responsibility for the crimes;
- An affidavit from Jose Colon—Marisol's husband—in which he avers 20 years after the murders that Chuito had a motive to kill Torres.

(Doc. No. 71 at 95–98; see also Doc. No. 71-1.) Reynoso argues this evidence is sufficient to serve as a gateway to his two underlying untimely habeas claims: (1) his trial counsel ineffectively

failed to develop the additional alibi evidence; and (2) the Commonwealth suppressed the purportedly exculpatory H-File documents. (Doc. No. 71 at 93–138, 152.)

In her second Report, Judge Sitarski recommends that I dismiss the Petition as untimely without reaching Reynoso's underlying claims, holding an evidentiary hearing, or issuing a certificate of appealability. (Doc. No. 93 at 90–93.) Judge Sitarski found that even though much of Reynoso's evidence may be "new" under Reeves, it is not reliable. (Id. at 12–74); 897 F.3d 154. Judge Sitarski also found that Reynoso "failed to show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." (Doc. No. 93 at 90.) Reynoso has filed lengthy, counseled Objections to the Report, to which the Commonwealth has responded. (Doc. Nos. 120, 131.)

## II. LEGAL STANDARDS

I must review de novo those portions of the Report to which Reynoso filed timely, specific objections. 28 U.S.C. § 636(b)(1)(C). I may "accept, reject, or modify, in whole or in part" Judge Sitarski's findings or recommendations. Id.; Brophy v. Halter, 153 F. Supp. 2d 667, 669 (E.D. Pa. 2001). As to those portions to which no objections have been made, I must "satisfy [myself] that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) Advisory Committee Note to the 1983 Amendment; see Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining the Court's responsibility "to afford some level of review" when no objections have been made).

I may consider a § 2254 petition that is untimely or otherwise procedurally defaulted if the petitioner makes a "gateway" showing of "actual innocence." McQuiggin, 569 U.S. at 386; Schlup, 513 U.S. 298. To qualify, the petitioner must: (1) "present new, reliable evidence that was not presented at trial"; and (2) "show by a preponderance of the evidence, 'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'"

Houck v. Stickman, 625 F.3d 88, 93 (3d Cir. 2010) (quoting Schlup, 513 U.S. at 324). "The gateway actual innocence standard is 'demanding' and satisfied only in the 'rare' and 'extraordinary' case where 'a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Reeves, 897 F.3d at 161 (quoting McQuiggin, 569 U.S. at 386, 392, 401). "It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that." Cox v. Beard, No. 12-285, 2014 WL 556236, at *9 (W.D. Pa. Feb. 13, 2014) (citing Schlup, 512 U.S. at 329)).

## III. OBJECTIONS

### A. Reliability

"As part of the reliability assessment" of new evidence of innocence, "the court 'may consider how the timing of [the petitioner's] submission and the likely credibility of the [witnesses] bear on the probable reliability of that evidence,' as well as the circumstances surrounding the evidence and any supporting corroboration." Reeves, 897 F.3d at 161 (quoting House v. Bell, 547 U.S. 518, 537, 551)).

*Alibi Affidavits*

Reynoso presents eight new alibi affidavits that apparently were prepared in 2000 by his friends and relatives. (Doc. No. 71 at 63–67.) Reynoso objects to Judge Sitarski's finding that these affidavits—signed nine years after the murders—were unreliable. (Doc. Nos. 93 at 28–29, 120 at 9–18.) I agree with Judge Sitarski.

Reynoso first argues that Judge Sitarski erred in discounting the affidavits' reliability based on their timing without considering the reason for the delay in production: Reynoso's counsel had ineffectively failed to develop the evidence sooner. (Doc. No. 120 at 9–11.) Yet, "[t]he timing of a statement is relevant to assessing its credibility and . . . an '11th hour' affidavit does not carry

great weight," even in the circumstances urged here. Bennett v. Irwin, No. 22-5015, 2024 WL 3174479, at *9 (E.D. Pa. May 24, 2024) (affidavit signed by a witness four years after the petitioner's trial and ten years after the murder was unreliable, even though the petitioner alleged his trial counsel was ineffective for failing to interview that witness previously), report and recommendation adopted, No. 22-5015, 2024 WL 3165277 (E.D. Pa. June 25, 2024); (see also Doc. No. 93 at 28–29 (collecting authorities).)

Reynoso next argues that it was unreasonable for Judge Sitarski to find the affidavits raised "questions of bias" because of the affiants' close relationships with Reynoso. (Doc. No. 120 at 11–12.) The Third Circuit has admonished, however, that "'alibi testimony by a defendant's family members is of significantly less exculpatory value than the testimony of an objective witness.'" Hess v. Mazurkiewicz, 135 F.3d 905, 909 (3d Cir. 1998) (quoting Romero v. Tansy, 46 F.3d 1024, 1030 (10th Cir.1995)); see also Pirela v. Vaughn, No. 01-4017, 2014 WL 1199345, at *14, *46 (E.D. Pa. Mar. 24, 2014) (discounting affidavits where the affiants were the petitioner's family or friends).

Reynoso next argues that Judge Sitarski mistakenly found that "the 'affiants failed to factually support their averments' that [he] 'was in the Dominican Republic' on July 23, 1991." (Doc. No. 120 at 13 (quoting Doc. No. 93 at 29).) Reynoso here notes that six of the eight affiants said that they saw him on July 23, 1991. (Id. at 13–15.) This misses the point: even when an affiant purported to identify the precise date in question, he or she failed to explain adequately how, nine years later, he was certain that he saw Reynoso on that particular day. See Reeves, 897 F.3d at 161. Given this lack of detail (as well as the bias and timing concerns I have discussed), an affiant purporting to place Reynoso in the Dominican Republic on the day of the murders without more does not make out innocence. Cf. Lopez v. Miller, 915 F. Supp. 2d 373, 401

(E.D.N.Y. 2013) ("detailed and consistent" belated alibi affidavits were reliable new evidence of actual innocence).

Finally, Reynoso argues that even if "nothing remarkable . . . happened in Pimentel" on July 23, 1991, the affiants would have remembered Reynoso's absence, given the consistency with which they saw him during the surrounding weeks. (Id. at 13–18.) Once again, however, nothing in the affidavits provides any reason why the affiants would, nine years after the fact, have recalled Reynoso's absence for just a few days.

*Passport Stamps*

As I have discussed, Reynoso's passport stated that he entered the Dominican Republic on July 13, 1991 and did not leave unit July 27, 1991. As I have also discussed, the Commonwealth presented expert testimony that the July 27 passport stamp was forged. Indeed, as I discuss below, Reynoso now acknowledges the forgery (and, incredibly, argues that this, too, proves his innocence). (See Doc. No. 71 at 80.) Judge Sitarski found, however, that several witnesses credibly remembered that Reynoso "was in the Dominican Republic on July 13, 1991 because that was the date they either accompanied him on the flight to Santo Domingo or met up with him at the airport there." (Doc. No. 93 at 29.) Reynoso argues that this credibility finding is inconsistent with her rejection of his passport stamp showing that he entered the Dominican Republic on July 13, 1991. (Doc. No. 120 at 19–20.) Yet, Judge Sitarski never found the July 13, 1991 stamp, specifically, to be unreliable. Rather, as the Commonwealth notes, she "declined to credit *the passport stamps as a whole* as an 'accurate [] reflect[ion of] his travel history.'" (Doc. No. 131 at 8–9 (quoting Doc. No. 93 at 38) (emphasis added).) Judge Sitarski thus simply found that the absence of any passport stamps indicating that Reynoso travelled back to the United States after July 13, 1991 but before the July 23, 1991 murders does not reliably show that he did not to do so. Because this finding was entirely proper, I will overrule Reynoso's objection.

*2020 Zoom Interviews*

Reynoso objects to Judge Sitarski's finding that an unsworn statement given by his neighbor, Anna Roman Deleno, to his present counsel, was not reliable alibi evidence. (Doc. No. 120 at 21–22 (citing Doc. No. 93 at 33).) Like the alibi affiants, Deleno did not explain how she knew, almost thirty years later, that she saw Reynoso on July 23, 1991. (Doc. No. 93 at 33.) As I have discussed, the absence of specific, corroborative details impugns a statement's reliability. See Reeves, 897 F.3d at 161. Accordingly, I will overrule this objection.

Reynoso next objects to Judge Sitarski's finding that a portion of an unsworn statement given by his wife's Dominican obstetrician, Dr. Ana Luisa Milagros Rosario, supports the "Commonwealth's assertion that [Reynoso] had some way of traveling between the United States and the Dominican Republic undetected." (Doc. Nos. 93 at 26, 120 at 22–27.) Dr. Rosario told counsel that Reynoso "lived in the United States," but repeatedly "accompanied" his wife to her prenatal appointments when he "visit[ed]" her in the Dominican Republic. (Doc. No. 93 at 33–34 (citing Doc. No. 77 at 21–22).) As Judge Sitarski explained, Reynoso's wife gave birth in the Dominican Republic in April 1992, but Reynoso's passport had no stamps between July 27, 1991 (when he purportedly left the Republic) and March 10, 1994 (the only time he purportedly reentered). (Doc. No. 93 at 35, 37.) If Reynoso was living in the United States but visiting the Dominican Republic repeatedly when his wife was pregnant, then, as Judge Sitarski found, he necessarily did so without his passport so indicating.

Reynoso also argues that Judge Sitarski unfairly credited this one statement by Dr. Rosario over the several other alibi affidavits and Zoom interviews. (Doc. No. 120 at 23–27.) Reynoso thus ignores that it is "*his* burden is to come forward with actual 'new reliable evidence . . . not presented at trial'"—not the Commonwealth's. Ruoss v. Pennsylvania, No. 08-172, 2008 WL 2622906, at *6 (E.D. Pa. June 27, 2008) (emphasis added) (quoting Schlup, 513 U.S. at 324).

Judge Sitarski thus properly noted that the inconsistency between Dr. Rosario's statement and Reynoso's other new alibi evidence further impugns the reliability of that evidence.

*Alibi Testimony at Reynoso's Trial*

Reynoso objects to Judge Sitarski's finding that the proposed and trial testimony of alibi witnesses was not sufficiently corroborated. (Doc. No. 120 at 26–28.) Once again, Reynoso takes issue with Judge Sitarski's finding that neither the old nor new alibi evidence was corroborated: for instance, by indicating that anything particularly memorable happened in Pimentel on July 23, 1991. As I have discussed, this finding is well-supported. Accordingly, I will overrule this objection.

*Reynoso's Belated Admission Regarding the Fabricated Passport Stamps*

Having vigorously urged through trial and earlier in these proceedings the genuineness of his passport stamps, Reynoso now urges the opposite: he "admits" that his July 27, 1991 Dominican exit and March 10, 1994 Dominican entry passport stamps were fabricated—something he first told his counsel in December 2019. (Doc. Nos. 16 at 100–01, 40 at 29–31, 71 at 80, 120 at 31; N.T. 06/26/96 at 107–09, 110–11, 130–33.) Yet, Reynoso objects to Judge Sitarski's finding that his failure to admit the fabrication for nearly three decades "'casts considerable doubt on the credibility of his alibi theory.'" (Doc. No. 120 at 31 (quoting Doc. No. 93 at 38).) I will overrule this objection.

Reynoso now urges that he fabricated the passport stamps not to create an alibi for the murders, but to to retain his immigration status. (Doc. No. 120 at 32–33.) He alleges that he was in the Dominican Republic for nearly three years—from July 13, 1991 to March 23, 1994—but that he would have relinquished his immigration status upon reentry to the United States unless he could make it seem as if he had been gone for no more than two weeks at a time. (Id.) Reynoso

urges that this is the "simplest explanation" for why he fabricated the July 27, 1991 and March 10, 1994 passport stamps. (Id. at 31–33.) Reynoso has contradicted himself.

If the fabrication of these passport stamps substantiated Reynoso's alibi, then he would not have argued—as he did for nearly thirty years—that the stamps were authentic. (See N.T. 6/26/1996 at 133:15–134:12; Doc. No. 16 at 101.) Plainly, if any stamps was fabricated, this would cast grave doubt on whether Reynoso's passport could be relied upon to establish his whereabouts on any particular day (especially decades after the fact). Accordingly, I overrule Reynoso's objection: Judge Sitarski reasonably found that his belated forgery admission casts considerable doubt on the credibility of his alibi defense.

*Attorney Thomas Griffin's Report*

Griffin reported, after examining Reynoso's immigration documents and passport stamps and interviewing Reynoso, that Reynoso forged the stamps to maintain his immigration status in the United States. (Doc. No. 71-1 at 349–59.) As I have discussed, Judge Sitarski discredited Reynoso's belated explanation. She found instead that the falsehood Reynoso had maintained for some 30 years—that the stamps were not forged and confirm that he was not in the United States on the day of the double murders—rendered that belated explanation unreliable. In rejecting Griffin's report, she thus properly found "much of the evidence undergirding" the report "is itself unreliable or problematic." (Doc. No. 93 at 41–42.) I will overrule Reynoso's objections to these findings. (See Doc. No. 120 at 28–30.)

Reynoso also argues that the Commonwealth failed to present any "corroborating or substantiating evidence to validate" the finding of Elaine Wooten (the prosecution's document expert) that the March 10, 1994 Dominican entry stamp was authentic. (Doc. No. 120 at 30 (citing N.T. 6/26/97 at 112).) This "argument reverses the order of the two-pronged analysis under Schlup and Howell." Tillery v. Clark, No. 20-2675, 2024 WL 6971165, at *16 (E.D. Pa. Sept. 3,

2024), report and recommendation adopted, No. 20-2675, 2026 WL 27822 (E.D. Pa. Jan. 5, 2026). "Without reliable evidence of [Reynoso's] actual innocence, [I do] not reach the question of whether any reasonable juror, in light of that evidence, would vote to convict him." Id. Accordingly, it was appropriate for Judge Sitarski to scrutinize the reliability of Reynoso's new evidence without first evaluating "what [Reynoso] believes to be [the] deficiencies in the Commonwealth's case." Id.

Finally, Reynoso argues that the authenticity of the INS documents Griffin reviewed in reaching his conclusions is undisputed. (Doc. No. 120 at 29.) Yet, as Judge Sitarski noted, Griffin also based his report on his interview with Reynoso. (Doc. No. 71-1 at 349–350, 93 at 42.) Once again, Judge Sitarski did not err when she determined that Griffin's report was unreliable based on the unreliability of that underlying evidence.

*H-File Documents*

Reynoso objects to Judge Sitarski's finding that the "suppressed" documents are not reliable evidence of his innocence. (Doc. No. 120 at 47–52.) These objections are overruled.

The "Homicide Summary" document listed "Chuito" and "Popoditto" as the "persons responsible for the murders," that Garcia had been arrested, and that "Popoditto" remained a fugitive. (Doc. No. 71-1 at 3.) Even if the Homicide Summary implicates Chuito, it is still not reliable evidence of Reynoso's innocence because it also lists "Popoditto" as a person responsible. (See id.) Wilkerson and Robinson each testified at trial that they knew Reynoso by some variant of the "Popoditto" nickname, as did Reynoso's own character witnesses. (N.T. 6/25/96 at 91:3–10; N.T. 6/26/96 at 168:24–69:19; N.T. 6/28/96 at 10:15–17, 11:12–14, 18:7–13.)

Reynoso's argument that the additional H-File documents are reliable, exculpatory evidence because they identify Felo Garcia (as opposed to Reynoso) as "Popodito" or "Popidito" fails for similar reasons. (Doc. No. 120 at 50–52.) That some unknown person may have at some

point identified Garcia to the police as "Popodito" is hardly reliable evidence of innocence, given the extensive trial testimony identifying Reynoso by some variant of that nickname. (See N.T. 6/25/96 at 91:3–10; N.T. 6/26/96 at 168:24–69:19; N.T. 6/28/96 at 10:15–17, 11:12–14, 18:7–13.) Moreover, the Homicide Summary clearly identifies "Popoditto" and Garcia as two different people. (See Doc. No. 71-1 at 3.)

Reynoso argues at length that it was Robinson who identified Garcia to the police as "Popodito" shortly after Garcia was arrested on July 27, 1991, and that Robinson's statement to the police two days later—in which she stated that she had previously "mixed up" the names of the two men seated in the front of the car—is not credible. (Doc. Nos. 71-1 at 61, 120 at 34–47, 51–52.) Reynoso's purported credibility determination provides no basis to disregard the wealth of previously discussed evidence identifying Reynoso by some variant of the "Popodito" nickname.

*Wilkerson and Robinson's Recantations*

"As a general matter, a recantation in the absence of corroborating evidence or circumstances will probably fall short of the standard of reliability contemplated by Schlup." Howell v. Superintendent Albion SCI, 978 F.3d 54, 60 (3d Cir. 2020). Recantation evidence should not, however, be "categorically rejected." Id. Rather, "recantations should be analyzed on an individual and fact-specific basis, taking into account the non-exclusive factors outlined in Reeves." Id. Where, as here, "the recantation involves an admission of perjury, it is the least reliable form of proof." Teagle v. Diguglielmo, 336 F. App'x 209, 213 (3d Cir. 2009).

Reynoso objects to Judge Sitarski's finding that Robinson and Wilkerson's recantations were not reliable, exculpatory evidence. (Doc. No. 120 at 52–68.) I will overrule these objections.

With respect to Wilkerson, the PCRA Court found his 2013 recantation testimony incredible because, *inter alia*, his identification of Chuito as the shooter was inconsistent with his

initial March 1, 2012 recantation affidavit, in which he averred that he did not recognize anyone in the car. (Doc. No. 93 at 70 (citing Commonwealth v. Reynoso, CP-51-CR-0500301-1994, slip op. at 7 (Phila. Cnty. Com. Pl Dec. 31, 2014).) As Judge Sitarski explained, "[t]his Court must . . . defer to the PCRA Court's findings of fact, including its assessment of Wilkerson's credibility," unless Reynoso rebuts those "findings with clear and convincing evidence." (Doc. No. 93 at 72 (citing 28 U.S.C. § 2254(e)(1); Harris v. Mahally, No. 17-1688, 2017 WL 6949815, at *7 (E.D. Pa. Nov. 30, 2017), report and recommendation adopted, 2018 WL 451638 (E.D. Pa. Jan. 17, 2018)).)

Despite this deferential standard, Reynoso argues that Judge Sitarski erred by failing to consider Wilkerson's explanation for the inconsistency between his initial recantation affidavit and his subsequent PCRA hearing testimony: i.e., Wilkerson had feared Chuito, but was moved by his newfound religious conviction to tell the full truth. (Doc. No. 120 at 62; N.T. 8/13/13 at 32–33, 71.) Yet, Judge Sitarski explicitly found this explanation was suspect because, "as the PCRA Court observed, at [Reynoso's] trial [Wilkerson] had previously implicated Chuito in the double murder." (Doc. No. 93 at 72.) Indeed, Wilkerson testified repeatedly at Reynoso's trial that Chuito was also in the car from which Reynoso shot his victims. (N.T. 6/26/96 at 51:20–24, 62:8–63:8.) Accordingly, I agree with both the PCRA Court and Judge Sitarski that Wilkerson's "explanation" is belied by that trial testimony.

With respect to Robinson, Reynoso objects to Judge Sitarski's finding that Robinson's "new account"—that "she identified [Reynoso] as the shooter at his preliminary hearing and trial because police instructed her to implicate (or 'finger') everyone apprehended during the raid"—"does not line up with the record." (Doc. Nos. 93 at 63–64, 120 at 53–54.) I agree with Judge Sitarski that the new account "makes little sense." (Doc. No. 93 at 63.)

In a 2021 interview with the DAO, Robinson stated that she was "certain" that Reynoso "was there when the police raided the house" in July 1991, "that the detectives had asked her to identify anyone they pulled out of the house as involved in the murders," and that Reynoso "was among them." (Doc. No. 71-1 at 186; see also Doc. No. 71-1 at 163–70 (Robinson's initial 2010 recantation statement averring substantially the same).) Yet, the record shows that Reynoso was not apprehended until he reentered the United States on March 23, 1994. (Doc. Nos. 21-8 at 1–4, 71-1 at 357–58.) Robinson's new account is thus necessarily incorrect. Reynoso's arguments regarding: (1) the purported consistency between Robinson's new account, the H-File documents, and Robinson's initial nonidentification of Reynoso to the police; and (2) the prosecution's "power and resources" to encourage false testimony from Robinson both fail to address this fundamental flaw in the reliability of her recantation. (Doc. No. 120 at 53–60.)

Reynoso also objects to Judge Sitarski's finding that Wilkerson and Robinson's recantations were inconsistent with and not corroborative of each other. (Id. at 59, 63–68; Doc. No. 93 at 64, 72–73.) The bulk of Reynoso's objection addresses Wilkerson's PCRA hearing testimony that Robinson was "lying" when she spoke with police after the shooting. (Doc. No. 120 at 66–68 (citing N.T. 8/13/2013 at 38–39).) When asked by the PCRA Court to specify what exactly Robinson had been lying about, Wilkerson replied, "I don't know—the point was the fact that we wasn't supposed to be talking to no police at all." (Id.) Reynoso argues that given this context, it was wrong for Judge Sitarski to "latch[] on to" the "she 'was lying'" portion of Wilkerson's testimony to find that his "account of the shooting differed from Robinson's." (Id. at 67.)

Regardless of whether Wilkerson actually disputed the truth of anything Robinson had told the police after the shootings, their recantations are not sufficiently corroborative as to be reliable.

When testifying before the PCRA Court, Wilkerson denied that Robinson had witnessed the shooting at all. (N.T. 8/13/2013 at 45.) Even though both Wilkerson and Robinson now identify Chuito as the shooter, this inconsistency underscores their recantations' unreliability.

*Marisol Colon-Torres's 2011 Affidavit*

Reynoso objects to Judge Sitarski's finding that Colon-Torres's 2011 affidavit was not reliable exculpatory evidence. (Doc. No. 120 at 68–70.) I will overrule this objection.

Reynoso first argues that Judge Sitarski's "credibility assessment gave no weight" to the fact that Colon-Torres is the sister of one of the victims. (Id. at 69–70.) Her affidavit remains unreliable, however. She averred that on the day of the murders, she "heard gunshots and saw Chuito in a car pulling away." (Doc. No. 71-1 at 180.) She further averred that "[a] short time thereafter," Chuito replied, "Don't worry about it. I did you a favor," when she "asked him why he had killed [her] brother." (Id.) These averments are consistent with Wilkerson's repeated trial testimony that Chuito—who, the Commonwealth argues, was Reynoso's "boss"—was also in the car during the shooting. (See Doc. No. 131 at 6, N.T. 6/26/96 at 51:20–24, 62:8–63:8). Accordingly, Judge Sitarski permissibly found that Colon-Torres's affidavit is not reliable evidence of Reynoso's innocence.

Reynoso next argues that Judge Sitarski's refusal to credit Colon-Torres's narrative is inconsistent with her treatment of evidence favorable to the Commonwealth. (See Doc. Nos. 93 at 56 ("It is doubtful that '[a] short time' after her brother's murder, Colon-Torres would choose to go, apparently alone, to Chuito's 'drug house' and confront the man who she believed had just shot and killed her brother." (quoting Doc. No. 71-1 at 179)), 120 at 70–71.) Once again, it is Reynoso's burden to present new, reliable evidence at the first step of the Schlup inquiry; Judge Sitarski is not required at that step to assess the purported "deficiencies in the Commonwealth's case." Tillery, 2024 WL 6971165, at *16.

**B. Likelihood of Conviction**

Reynoso objects to Judge Sitarski's likelihood of conviction analysis on the same grounds that he objects to each of the reliability findings that I have discussed. (Doc. No. 120 at 72 ("[B]ecause the likelihood of conviction analysis is based entirely on Magistrate Sitarski's credibility and reliability findings—if Magistrate Sitarski's credibility and reliability findings are wrong, her likelihood of conviction of analysis is worthless/invalid."). Accordingly, for the same reasons that I overruled Reynoso's objections to Judge Sitarski's reliability findings, I will overrule this objection as well.

**C. Request for an Evidentiary Hearing**

Reynoso objects to Judge Sitarski's recommendation to deny him an evidentiary hearing, arguing without elaboration that he is entitled to such a hearing. (Doc. No. 120 at 72.) I agree with Judge Sitarski that additional fact-finding is unnecessary, as any further factual development would not assist Reynoso in satisfying his demanding burden under Schlup. (Doc. No. 93 at 90–92.)

**D. Certificate of Appealability**

Reynoso objects to Judge Sitarski's recommendation that I deny his Petition without granting a certificate of appealability. (Doc. No. 120 at 72–74.) He argues that even if I otherwise adopt the Report, he is entitled to a COA on the following issue:

> Whether the District Court erred in adopting the Magistrate Judge's credibility and reliability findings – where the Magistrate Judge used different credibility and reliability standards when evaluating [Reynoso's] new evidence of innocence and the DAO's old (trial) evidence – where [Reynoso's] new evidence of innocence required him to meet a heightened standard of credibility and reliability – which the DAO's old (trial) evidence didn't have to meet.

(Id. at 73.) I disagree that jurists of reason could debate Judge Sitarski's application of "credibility and reliability standards" to the new and old evidence. As I have discussed, Reynoso must first

put forth reliable evidence of his innocence before Judge Sitarski can assess the likelihood of conviction by weighing that new evidence against the old. See Tillery, 2024 WL 6971165, at *16 (citing Schlup, 513 U.S. at 324); supra Part III § A. It is thus not debatable that Judge Sitarski was not required to reassess the reliability of the Commonwealth's old evidence at step one of the Schlup inquiry.

## IV. CONCLUSION

The Third Circuit has admonished that the innocence gateway can be met only in the "rare" and "extraordinary" § 2254 case: one where the Petitioner presents exculpatory evidence "so strong that a court cannot have confidence in the outcome of the trial." Reeves, 897 F.3d at 161 (quoting McQuiggin, 569 U.S. at 386, 392, 401). Having conducted a painstaking analysis of Reynoso's "new" evidence—all of it devised some 10 to 35 years after the Torres and Rivera murders—Judge Sitarski found it unreliable, vague, and contradictory. My review of Reynoso's objections compels me to agree. Because he has not made the gateway actual innocence showing, Reynoso's Petition remains time barred. Accordingly, I will dismiss the Petition without addressing Reynoso's underlying habeas claims and without conducting a hearing.

*   *   *

**AND NOW**, this 27th day of July, 2026, upon consideration of the pleadings and record herein, and after careful review of the Report and Recommendation of United States Magistrate Judge Lynne A. Sitarski (Doc. No. 93), Petitioner's Objections (Doc. No. 120), and Respondents Response (Doc. No. 131), it is hereby **ORDERED** that:

1. The Supplemental Amended Petition for Writ of Habeas Corpus (Doc. No. 71) is **DENIED**;
2. Petitioner's Objections to the Report and Recommendation (Doc. No. 120) are

**OVERRULED**;

3. The Report and Recommendation (Doc. No. 93) is **APPROVED** and **ADOPTED**;

4. There are no grounds to issue a certificate of appealability; and

5. The Clerk of the Court shall **CLOSE** this case.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

Paul S. Diamond, J.